

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 8, 2019**

*Mark X. Mullin*
**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 16-40636-MXM-13 |
| GUSTAVO VILLARREAL, | § § | CHAPTER 13 |
| DEBTOR. | § | |
| J-S NORTH RICHLAND HILLS OPERATIONS, LP D/B/A/ EMERALD HILLS REHABILITATION AND HEALTHCARE CENTER, | § § § § § | |
| PLAINTIFF, | § § | |
| V. | § § | ADVERSARY NO. 18-04068 |
| GUSTAVO VILLARREAL, | § § § | |
| DEFENDANT. | § | |

**MEMORANDUM OPINION**

On October 23, 2018, the Court held a trial on the *Core Adversary Proceeding Complaint to Determine the Validity, Priority, or Extent of a Lien or Other Interest in Property, other than a Proceeding Under Rule 4003(D)* (the "**Complaint**") filed by J-S North Richland Hills Operations, LP D/B/A Emerald Hills Rehabilitation and Healthcare Center ("**Plaintiff**") against Gustavo Villarreal ("**Defendant**").  Plaintiff seeks to unwind a transfer of property from Defendant's now deceased mother to Defendant, arguing that the transfer is either illusory and therefore void for lack of consideration, or is avoidable as a fraudulent transfer.  Because the transfer is not void and was not a fraudulent transfer, the Court denies all relief requested in the Complaint.

### I.    JURISDICTION; VENUE; STATUTORY AND CONSTITUTIONAL AUTHORITY

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of reference in this district. This proceeding is a core proceeding over which the Court has both statutory and constitutional authority to enter a final judgment.  To the extent this proceeding is a non-core proceeding, the parties have consented to this Court's entry of a final judgment. Venue is proper pursuant to 28 U.S.C. §1409(a).

### II.    FACTUAL AND PROCEDURAL HISTORY

The Court incorporates by reference the parties' *Statement of Stipulated Facts,*[1] a true and correct copy of which is attached to this Order as ***Exhibit A***.  Familiarity with the Statement of Stipulated Facts is assumed.  Capitalized terms in this Order that are not otherwise defined have the meaning given to them in the Statement of Stipulated Facts.

---

[1] Adv. ECF No. 35.

### III. LEGAL ANALYSIS

The Complaint asserts that the transfer pursuant to the Deed is either (a) illusory and therefore void for lack of consideration, or (b) avoidable as a fraudulent transfer. Neither assertion has merit.

**A.    The transfer pursuant to the Deed is permitted by statute and is not illusory or void.**

First, the Complaint alleges that the Deed is illusory and therefore void. The Deed conveys the Real Property from Ms. Villarreal to Defendant as "a deed of gift," but reserves from the conveyance a life estate for Ms. Villarreal and

> the full power and authority to sell, convey, mortgage, lease and otherwise dispose of the property in fee simple with or without consideration and without joinder by Grantee, and to keep absolutely any and all proceeds derived therefrom. Further, Grantor reserves the right to appoint different or additional remainder owners (Grantees), at any time and from time to time without consent of Grantee. Upon the death of Grantor, full record title shall vest in Grantee.[2]

Texas Property Code section 5.041 permits conveyances of contingent remainder interests like the interest transferred to Defendant under the Deed. "A person may make an inter vivos conveyance of an estate of freehold or inheritance that commences in the future, in the same manner as by a will."[3] This statute and its predecessor statute eliminated the common law prohibition against an estate that commences in the future, such as upon the death of the grantor.[4]

---

[2] Pl.'s Ex. G.

[3] TEX. PROP. CODE ANN. § 5.041.

[4] *See Davis v. Zeanon,* 111 S.W.2d 772, 773 (Tex. Civ. App.—Waco 1937) ("At common law, an estate in remainder, expectant on the death of the grantor, could not be created, but in this state, by virtue of a special statutory provision, an estate in land may be created by deed to commence in futuro."). Recent opinions agree. *See, e.g., York v. Boatman,* 487 S.W.3d 635, 641 (Tex. App.—Texarkana 2016) (citing *Davis v. Zeanon* and rejecting the argument that a gift by deed was void because it was not a gift of a *present* interest; "When conveyed by deed, an estate in realty may be made to commence in the future.").

Even though the Texas Property Code allows a transfer of contingent remainder interests, Plaintiff insists that the Deed is illusory because the Deed failed to bind Ms. Villarreal to any present obligation to transfer the Real Property and instead let her retain the option of discontinuing performance at any moment.[5] In support, Plaintiff cites *Land v. Marshall*,[6] where the Texas Supreme Court held a trust invalid because of the trustor's complete control over the trustee.[7] But that opinion dealt with a widow's efforts to set aside a trust created by her husband, and the court was careful to limit its holding to the special issues created by Texas's community property protection of the wife's distributive share.[8] Specifically, the *Land v. Marshall* court found that the additional community property policy considerations present in that case were not present in other cases that follow the general rule that "an otherwise valid trust is not rendered invalid because the trustor reserves income for life, supervision of investments, right to amend or revoke the trust, and the right to consume the principal."[9] Therefore, *Land v. Marshall* simply is not on point.

An opinion that is more on point is *In re Turner*,[10] where the court rejected a grantee's attack on a real-property deed that reserved to the grantor a life estate with the "full possession, benefit and use" of the property, "as well as the rents, issues and profits thereof and the unilateral power of sale of any or all of the [property] with or without the consent of [the grantee]."[11] The *Turner* court upheld the grantor's transfer of the property to another transferee, concluding that the

---

[5] Pl.'s Trial Brief at 7.

[6] 426 S.W.2d 841 (Tex. 1968).

[7] *Id.* at 846-47.

[8] *Id.* at 848-49.

[9] *Id.* at 848.

[10] No. 06-17-00071-CV, 2017 WL 6062655 (Tex. App.—Texarkana Dec. 8, 2017), *pet. denied* (Mar. 16, 2018), *cert. denied sub nom. McIntosh v. Estate of Turner*, 139 S. Ct. 160 (2018).

[11] *Id.* at *1.

grantor reserved her rights in the real property, including her right to sell it, thereby "eviscerating" the grantee's contingent remainder interest.[12] Notably absent from the opinion is any suggestion that the deed was illusory and therefore void because of the powers reserved to the grantor during the life estate.

In the analogous context of a will, the Texas Supreme Court likewise has concluded that a life estate with an unlimited power of disposition is not repugnant to the life estate and is not repugnant to the remainder, but when exercised, the power of disposition defeats the remainder of the property sold or conveyed.[13]

Through the Deed, Ms. Villarreal reserved to herself a life estate with the full power of disposition over the Real Property and transferred to Defendant a contingent remainder interest. That transfer is permitted by the Texas Property Code and is consistent with Texas common law. Therefore, the Deed is not illusory or void under Texas law as Plaintiff argues.

**B.     The transfer pursuant to the Deed was not a fraudulent conveyance.**

The Complaint next asserts that the transfer pursuant to the Deed was a fraudulent conveyance under the Texas Fraudulent Transfer Act ("***TUFTA***"). This assertion likewise lacks merit.

"TUFTA applies to the transfer of 'assets,' the definition of which explicitly excludes property that is exempt under nonbankruptcy law."[14] Moreover, it is well settled case law that a conveyance of exempt property may not be attacked on the ground that it was made in fraud of

---

[12] *Id.* at *3.

[13] *Edds v. Mitchell*, 184 S.W.2d 823, 825 (Tex. 1945).

[14] *Duran v. Henderson*, 71 S.W.3d 833, 842 (Tex. App.—Texarkana 2002) (citing TEX. BUS. & COM. CODE ANN. §§ 24.002(2); 24.002(12); 24.005).

5

creditors.[15] "The rationale for this rule is that because the law already has removed the homestead property from the reach of creditors, the conveyance of the property, whether fraudulent or not, does not deprive the creditors of any right they had against the property."[16]

Upon cross examination by Plaintiff's counsel in the main bankruptcy case at an earlier hearing on whether to confirm Defendant's Chapter 13 plan and whether to lift the automatic stay in favor of Plaintiff, Defendant testified that from 2005 until the Deed was signed in 2014, Ms. Villareal lived in the Real Property, paid the mortgage, paid the taxes, declared the Real Property as her homestead, and held the Real Property out as her home.[17] After the homestead character of property is established, the burden of showing abandonment or other loss of the homestead is on the creditor.[18] Plaintiff failed to prove that Ms. Villarreal lost her homestead through abandonment or otherwise simply because she moved into a skilled nursing facility for assistance. Because the Real Property was Ms. Villarreal's homestead when she signed the Deed, the transfer under the Deed was not a fraudulent conveyance.[19]

---

[15] *Chandler v. Welborn*, 294 S.W.2d 801, 805 (Tex. 1956); *Duran v. Henderson,* 71 S.W.3d at 842-43 (citing *Chandler*); *Crow v. First Nat'l Bank of Whitney,* 64 S.W.2d 377, 379 (Tex. Civ. App.—Waco 1933, writ ref'd); *W.F. Dulaney & Sons v. Lawler,* 282 S.W. 321, 322 (Tex. Civ. App.—Texarkana 1926, no writ)).

[16] *Duran*, 71 S.W.3d at 843; *Goebel v. Brandley,* 174 S.W.3d 359, 364 (Tex. App. –Houston (14th Dist.) 2005) (same).

[17] Dec. 21, 2016 Hr'g, Case No. 16-40636. This Court may take judicial notice of related proceedings and records in cases before this Court involving the same parties. *Shuttlesworth v. City of Birmingham, Ala*., 394 U.S. 147, 157 (1969) (U.S. Supreme Court could properly, in subsequent litigation before the Supreme Court and between the same parties, take judicial notice of record in prior litigation formerly before the Supreme Court); *MacMillan Bloedel Ltd. v. Flintkote Co*., 760 F.2d 580, 587 (5th Cir. 1985); *Aloe Creme Labs. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (per curiam) ("The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time.").

[18] *Parks v. Buckeye Ret. Co*., Civ. Action No. H-05-3524, 2006 WL 1662945, at *3 (S.D. Tex. June 9, 2006); *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971). *See also Duran*, 71 S.W.3d at 842 (noting that property may lose its homestead character only by the claimant's death, abandonment, or alienation).

[19] Although the Complaint alleges that the relevant transfer took place upon execution of the Deed, Plaintiff's trial brief also suggests that the relevant transfer took place upon Ms. Villarreal's death on May 17, 2016. *Trial Brief on Plaintiff's Claims*, Adv. ECF No. 23, at 10. The Court limits its ruling to address the allegations in the Complaint. Even if the Court were to expand its ruling to address Plaintiff's alternative alleged transfer raised in the trial brief, Defendant acquired his contingent remainder interest through Deed, almost two years before Ms. Villarreal's death. Ms. Villarreal could have eviscerated Defendant's contingent interest by disposing of the Real Property before she

## IV.    CONCLUSION

The transfer pursuant to the Deed is not illusory and void but instead is permitted by the Texas Property Code and is consistent with Texas common law.  The transfer pursuant to the Deed was not a fraudulent transfer because the Real Property was Ms. Villarreal's homestead at the time of the transfer.  The Court therefore denies all relief requested in the Complaint.[20]

### # # # END OF MEMORANDUM OPINION # # #

---

died, but she chose not to.  The relevant transfer took place upon execution of the Deed, and at that time, the Real Property was Ms. Villarreal's homestead.

[20] Given this ruling, the Court need not address Defendant's other arguments, including res judicata, collateral estoppel, laches, law of the case, and trespass to try title.

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | )( | |
| GUSTAVO VILLARREAL, | )( | Case No. 16-40636-mxm |
| DEBTOR, | )( | CHAPTER 13 |
| | )( | |

| | | |
|---|---|---|
| | )( | |
| J-S NORTH RICHLAND HILLS | )( | |
| OPERATIONS, LP D/B/A EMERALD | )( | |
| HILLS REHABILITATION AND | )( | |
| HEALTHCARE CENTER | )( | |
| Plaintiff | )( | |
| | )( | |
| v. | )( | Adversary Proceeding No. 18-04068-mxm |
| | )( | |
| GUSTAVO VILLARREAL | )( | |
| Defendants | )( | |

## STATEMENT OF STIPULATED FACTS

J-S North Richland Hills Operations, LP d/b/a Emerald Hills Rehabilitation and Healthcare Center ("Plaintiff"), Plaintiff, and Gustavo Villarreal, Defendant, have stipulated that the following facts are true.

1. On June 30, 2014, Myriam Villarreal (Defendant's mother) entered into a contract with Plaintiff in which Plaintiff agreed to provide goods and services to Myriam Villarreal through its skilled nursing facility in exchange for payment.

2. Myriam Villarreal's Estate currently owes a principal sum of $13,624.44 for services rendered and goods provided by Plaintiff pursuant to the contract.

3. The principal balance owed by Myriam Villarreal to Plaintiff has been $13,624.44 since December 10, 2014.

4. Myriam Villarreal and Defendant, as Ms. Villarreal's Attorney-in-Fact pursuant to a power of attorney, failed to pay the amount due during her life.

1

5. Myriam Villarreal's Estate and Defendant, as Ms. Villarreal's Attorney-in-Fact, have not paid the amount due since Myriam Villarreal passed away on May 17, 2016.

6. Plaintiff has sent Myriam Villarreal and Defendant statements demanding payment of the principal balance.

7. On July 8, 2014, while Myriam Villarreal was residing in the Plaintiff's nursing facility, she executed a "General Warranty Deed Reserving Life Estate" (hereinafter the "Deed") the authenticity and admissibility of which is hereby acknowledged by the parties.

8. The subject of the Deed consists of real property, namely a house and lot known as 6756 Dandelion Drive, Fort Worth, Tarrant County, Texas 76137, specifically described as Lot 10A, in Block 9, of Phase One "A" Summerfield East (the "Real Property").

9. Per the terms of the Deed, Myriam Villarreal's life estate in the Real Property terminated when she passed away on May 17, 2016. *See* the Deed ("Upon the death of Grantor, full record title shall vest in Grantee.").

10. Myriam Villarreal's Estate is insolvent and was insolvent as of May 17, 2016.

11. On December 10, 2015, Plaintiff filed suit in the 67th Judicial District Court of Tarrant County, alleging claims based on breach of contract, suit on sworn account, quantum meruit, and promissory estoppel. Plaintiff also requested a declaratory judgment the deed is illusory and therefore void, and alternatively that the transfer was fraudulent. Attached hereto as Exhibit 2, is a true and correct copy of the Original Petition, the authenticity and admissibility of which is hereby acknowledged by the parties.

12. On February 15, 2016, without answering the suit, Defendant filed for Chapter 13 bankruptcy, triggering the automatic stay.

13. On May 11, 2016, Plaintiff filed a Motion for Relief from Stay in the bankruptcy proceeding, case number 16-40636-mxm.

14. On June 29, 2016, Plaintiff filed an Amended Motion for Relief from Stay. Due to scheduling conflicts and other extenuating circumstances, the hearing on the Amended Motion for Relief from Stay was continued twice and a hearing was held on the motion on December 21, 2016.

15. On January 24, 2018, Plaintiff filed this core adversary proceeding alleging the conveyance of the Real Property pursuant to the Deed is illusory and void or, alternatively, that the transfer was a fraudulent transfer under Texas law.

16. In August of 1984, Defendant purchased the Real Property.

17. In about 1991, Defendant's parents assumed the mortgage on the Real Property and title for the Real Property was transferred to them.

18. In 1998, Defendant's father passed away and Defendant inherited an undivided one-half interest in the Real Property.

19. In 2005, Defendant's mother refinanced the loan, and at that time, Defendant was told that he needed to sign some papers that would ensure that he would continue owning the Real Property after his mother passed away.

20. Debtor signed the papers without the advice of counsel, and instead he signed away his interest in the Real Property to his mother against both their wishes and intent.

21. In March of 2013, after separating from his wife, returned to reside at the Real Property.

22. Later in about September of 2013, Defendant paid $21,000 to $23,000 out of his 401k account to his mother for one-half of the existing mortgage which she applied to the mortgage on the Real Property.

23. In May or June of 2014, Defendant and his mother found out that the documents they signed in 2005 negated Defendant's one-half interest in the Real Property.

24. In July 2014, the Willis Law Firm recommended the General Warranty Deed reserving Life Estate to correct what was done in 2005 and achieve the purposes intended back then with respect to the Real Property.

25. That deed was executed July 8, 2016.

26. Defendant, also referred to as "Debtor", filed his Chapter 13 bankruptcy case on 2/29/2016.

27. On 2/29/2016, Debtor filed his Schedules listing the subject property on A/B at Line 1 as follows:

> "Homestead
> House and Lot located at 6756
> Dandelion Dr., Fort Worth, TX 76137.
> [Debtor holds only the remainder
> interest FMV $56,702; his Mother
> retains a life estate FMV $41,004]"

28. On 2/29/2016, Debtor claimed the Real Property as exempt on Schedule C at Line 2.

29. On 2/29/2016, Debtor scheduled Plaintiff as an unliquidated, disputed, unsecured creditor on Schedule E/F at Line 4.6.

30. On 2/29/2016, Debtor filed his original Debtor's Chapter 13 Plan and Motion for Valuation.

31. On 2/28/2016, a hearing on the confirmation of the Debtor's plan and Motion for Valuation was noticed for 5/6/2016.

32. On 3/29/2016, the Trustee conducted the Meeting of Creditors which Plaintiff did not attend.

33. The deadline to object to debtor's exemptions was established as 4/28/2016. Plaintiff did not object to Debtor's exemption of the Real Property on or before 4/28/2016.

34. On 5/11/2016, Plaintiff filed an unsecured claim in the amount of $20,451.64.

35. On 5/11/2016, Plaintiff filed both a Motion for Relief from Stay and an Objection to Confirmation of Plan.

36. On 5/12/2016, Plaintiff amended its Motion for Relief from Stay and Objection to Confirmation without substantial change to the relevant assertions.

37. On 5/25/2016, Defendant filed an Answer and Objection to the Amended Motion for Relief from Stay.

38. On 5/17/2016, Defendant's mother passed away, and on 6/15/2016, Defendant Amended his Schedules A/B and C.

39. After Defendant filed the Amended Schedules, the parties in interest had until 7/15/2016 to file objections to the claimed exemptions in the Amended Schedules. Plaintiff did not file objections to the claimed exemptions on or before 7/15/2016.

40. The Court held final evidentiary hearings on 12/22/2016 regarding Plaintiff's Amended Motion for Relief from Stay and the confirmation of Defendant's Chapter 13 plan.

41. Plaintiff's motion for relief from stay was denied in part and granted in part. On 2/1/2017, this ruling was reduced to writing and entered as an order of the court.

42. Debtor's Plan was confirmed over the objection of Plaintiff with that ruling being reduced to writing and entered as an order of the Court on 1/31/2017.

43. Debtor's confirmation order was not appealed and became final no later than 2/14/2017.

44. On March 1, 2017, the Chapter 13 Trustee filed her Notice of Pre-Hearing Conference and Hearing and Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required).

45. On April 5, 2017, the Court entered Order Approving Trustee's Recommendation Concerning Claims, Objection to Claims, and Plan Modification (if required).

46. Defendant has continued to maintain the mortgage payments on the Real Property throughout his bankruptcy.

**SIGNATURE OF EACH ATTORNEY (OR PRO SE PARTY)**


 */s/*     Drew Thomas_____
**DAVID H. ESTES**
State Bar No. 24012599
**DREW M. THOMAS**
State Bar No. 24086841
destes@hdbdlaw.com
dthomas@hdbdlaw.com
**HARTLINE DACUS BARGER DREYER LLP**
8750 North Central Expressway, Suite 1600
Dallas, Texas 75231
(214) 369-2100
(214) 369-2118 (fax)
**ATTORNEYS FOR PLAINTIFF J-S NORTH RICHLAND HILLS OPERATIONS, LP D/B/A EMERALD HILLS REHABILITATION AND HEALTHCARE CENTER**


/s/      Jim Morrison
JIM MORRISON
Texas Bar No. 14519050
WELDON REED ALLMAND
Texas Bar No. 24027134
Allmand Law Firm, PLLC
860 Airport Freeway, Suite 301
Hurst, TX 76054
Telephone: (214) 265-0123
Facsimile: (214) 265-1979
Attorneys for Defendant